ANNA GARDOM

*v.*

JAMES M. CHESTER et al.

[Filed June 2d, 1900.]

A party in possession of lands under an unrecorded deed, who asserts constructive notice against one claiming under the recorded title, must prove such open, visible and exclusive possession and use of the premises, as an owner would be expected to exercise towards property in the situation and of the character of that in question; and such possession and use must be inconsistent with the record title, under which the party to be noticed claims his interest in the premises.

On bill, answer and proofs.

The complainant, Mrs. Gardom, on November 15th, 1893, by deed dated and acknowledged on that day, bought the land in question from Samuel S. E. Cowperthwaite and wife for the sum of $300, which she paid to Cowperthwaite. The premises consisted of a town lot, with no improvements upon it, situate on the southeasterly side of Asbury avenue, in Ocean City, thirty feet front by one hundred feet deep. On making the purchase Mrs. Gardom did not record her deed.

On the 26th day of February, 1895, while Mrs. Gardom's deed was yet unrecorded, a judgment was entered in the supreme court of New Jersey, by Sarah C. Browning against Samuel S. E. Cowperthwaite, Mrs. Gardom's grantor. Sarah C. Browning has since departed this life, testate, and the defendants Hollinshead and Coles have become executors of her will, and are defendants in that capacity.

Execution was issued on the judgment and levy made in the county of Cape May upon all the property of Samuel S. E. Cowperthwaite, as the same stood upon record in the county clerk's office, and among other properties levied upon was the lot which Cowperthwaite had already conveyed to Mrs. Gardom by the unrecorded deed, and for which he had been fully paid. The sheriff, under the instructions of the plaintiff's attorney, advertised the premises for sale as the property of the defendant Cowperthwaite, and on the 20th day of May, 1898, put the same up at public auction, and struck them down to James M. Chester for the sum of $100, and Chester afterwards interested the defendant William E. Massey, and they two subsequently took the sheriff himself into the partnership to share in the risks and profits of the purchase.

The undisputed proof is that the property, on the day of the sale, was worth something over $1,000. Whether the purchase at the sheriff's sale has yet been concluded was not finally shown. Some reference was made, on the argument, to a deed which the sheriff had executed to the purchasers, but no such deed was produced, and the sheriff admitted that he has not as yet paid over the purchase-money to the plaintiffs in the judgment, though more than two years have elapsed since the sale.

Shortly after the day of the sale, perhaps within two days, Mrs. Gardom heard of the fact that her lot had been sold, and applied to the bidders, Massey and Chester, for information as to the matter, and, before they had paid any of the purchase-price except the "down" money, explained to them that she was the owner of the property by deed made to her in 1893 by Cowperthwaite.

Conferences took place between Massey and Chester and Mrs. Gardom and also her daughter, Mrs. Stroubel, as to the terms

upon which they would abandon their claim under the sheriff's sale. These negotiations between the parties failed to come to any conclusion recognizing Mrs. Gardom's rights. On the 31st of May, 1898, she filed her bill in this court, subsequently amended, praying that the sheriff's sale may be set aside; that the defendants may be restrained from conveying away the premises, and that they may be decreed to reconvey the same to her, and for such other relief as may be equitable, &c.

The complainant alleges that she held title to the premises by the deed from Cowperthwaite made in November, 1893, which she inadvertently failed to have recorded, but charges that the defendant had notice of her ownership, because of her actual possession of the premises.

The defendants deny that they, or any of them, had any knowledge either that she was in possession of the premises, or that she had a deed therefor, which she had inadvertently failed to record, and say that they supposed the premises being sold were the property of Cowperthwaite, the defendant in the judgment.

The allegations of the amended bill are somewhat defective, in that they aver notice of the unrecorded deed to Sarah C. Browning, the plaintiff in the judgment, and to her agents, only at the time of the levy of the execution, whereas, to be effectual, the allegation should be of notice at the time of the entry of the judgment. All the defendants have answered, and none, either in pleading or argument, make any criticism of this defect. The proofs have been directed on both sides to support the contentions of the parties touching the nature of the complainant's possession of the premises under her unrecorded deed at and before the time of the entry of the judgment. The cause having been tried on this basis, the complainant is entitled to amend the defective allegation of her bill.

*Mr. John W. Wescott,* for the complainant.

*Mr. Schuyler C. Woodhull,* for the defendants Chester and Massey.

*Mr. Charles R. Stevenson,* for Hollinshead and Coles, executors.

*Mr. William D. Lippincott,* for Robert E. Hand, sheriff.

GREY, V. C.

The complainant claims to be in the position of one who was and is in the possession of her property by such open and notorious occupancy that all the world might know it; that the defendants, being chargeable with notice of this fact, are fraudulently endeavoring to deprive her of her property by and under the form of a judicial sale resulting in a deed to them conveying the premises. Her equity lies in her right to prevent the further prosecution of the alleged fraudulent scheme.

That the complainant was a *bona fide* purchaser of the premises in question, a year or more before the entry of the judgment under which the defendants claim, by a deed which was effectual to pass to her a fee-simple estate in the premises for which she had paid full consideration, is not denied by anyone. At that time it is conceded the lands were without improvement, and consisted of an ordinary seaside resort town lot. It is not disputed that the complainant erected on the premises a small residence reconstructed from an election booth, being about eleven feet front by thirty feet deep and about eight feet high, with portico in front and a pump in the rear, and an outhouse such as usually attends small dwellings. She fitted the house with curtains and other *indicia* of actual occupation, and has used the premises at her choice as a seaside residence from the time she erected the dwelling-house up to the present time.

The dispute between the parties touching this possession of the complainant rests wholly upon three points—*first,* the defendants insist that the complainant placed the structure on the premises and began to occupy it after the date of the entry of Sarah C. Browning's judgment; and *secondly,* that Mrs. Gardom's occupation was not a continuous personal possession; and *thirdly,* it was not inconsistent with the record title in Cowperthwaite. The complainant insists that she put up the building on the premises in the spring and early summer of

16

1894, and immediately occupied it as a seaside residence and place of health and recreation resort; that ever since the summer of 1894 she has so occupied and used the premises up to the present time; that the appearance of the property before and at the time of the entry of the Browning judgment, in February, 1895, showed that it was an occupied residence, whether at every moment of time she or her family might have actually been upon the premises or not.

The position of the holder of title by an unrecorded deed is defined by *Gen. Stat. p. 882 § 145,* which provides that an unrecorded deed shall be void and of no effect against subsequent judgment creditors without notice. This notice must have been at and before the date of the entry of the judgment. *Condit* v. *Wilson, 9 Stew. Eq. 371,* and cases there cited. The notice might be either actual or constructive; that is, it might be because actual consciousness of the existence of the unrecorded deed was brought to the party to be charged with notice, or because the grantee in the unrecorded deed had, by open, visible and exclusive acts of ownership, given such warning to all persons that the inference of notice is necessary and unquestionable.

That the complainant's occupation of the premises in this case was exclusive and was in assertion of her own right is not disputed. She used the property as her own residence, paid all the taxes and municipal charges, and her possession as owner was never, in fact, challenged by anyone save as the defendants now deny her right. The contention turns wholly upon the three points—when the complainant's acts of ownership began, whether they were so continuous as to charge the defendants with notice, and whether inconsistent with the record title in Cowperthwaite.

Taking up the first point—when the complainant first occupied: The complainant was a poor woman; her circumstances and situation were such that she needed an immediate occupancy of the premises to satisfy the inducements which led her to purchase. She bought in November, 1893, and it was an entirely natural thing that she should at once enter into the possession and enjoyment of the premises, as the condition of health of her sick son was such as to lead her to buy and use this place for his

refreshment and improvement. She testifies, and in that she is supported by her daughter, that the dwelling-house and its attendant structures were placed on the property in March or April, 1894; that some weeks passed in construction, and that they occupied it in July in the summer of that year. She produces a receipt for the survey of the premises dated April 18th, 1894, which she says she paid to a surveyor for locating the lot preparatory to the erection of the buildings, and she verifies the date of the erection of the buildings by that receipt, and also by her own occupation of the premises. In this she is corroborated, as to date, by her daughter, whose husband aided in the construction of the house, and who went down with her mother to occupy it shortly after it was built, and who has several times since occupied the premises as a seaside resort.

On the other side, the defendants' testimony seeking to show that the structure was not put on the premises until the summer of 1895, after the date of the Browning judgment, is uncertain, conjectural and supported by no documentary proofs which fix the date in question.

The weight of the evidence sufficiently shows that during the spring and early part of the summer, at least as early as July of the year 1894, the complainant improved her lot as above stated, and entered into possession of the property as her seaside residence. This occupation antedated the entry of the Browning judgment, which was in February, 1895, by seven months.

On the second point: The defendants insist that the occupation, in order to be effectual as notice that Mrs. Gardom claimed some estate in the premises in her own right, must have been not only actual, but so continuous that she was always personally present on the premises, in short, a *pedis possessio*. The rule touching such possession as would give notice of ownership under an unrecorded deed, may more fairly be stated to be that the party claiming under such a deed must prove such open, visible and exclusive possession and use of the premises as an owner, considering the situation and character of the property, would be expected to exercise; and that such possession and use must be inconsistent with the record title under which the party to be noticed claims his interest in the premises.

In this case the property consists of a dwelling-house and town lot at a New Jersey seaside resort. The complainant used it as her residence, paid the taxes assessed upon it, without dispute or denial of her right by anyone. She testifies that she personally occupied the house all the time that she did not have to work in the city to make her living. Her daughter also personally occupied it under her mother's title. These personal uses of the premises were shown to have been quite frequent during all the seasons of the year, at intervals sometimes of a week or two, and sometimes of longer periods. At seaside resorts occupation of residences in this way is very common. The population of such places increases tenfold in the summer time and decreases in the same proportion when the season is concluded. Hundreds of dwelling-houses are there held empty during nine months of the year, to be occupied only during the three summer months. No one deals with such property expecting an owner to have it continually personally occupied. The proofs show that the complainant's personal presence on the premises, in addition to her stay in the summer season, extended over other periods of the year.

The presence of the dwelling-house itself, with its curtains in the windows and other signs of personal use—the pump in the yard and the outhouse—were effectual to give notice of an actual possession by those who lived there, whether during every hour of the day they were personally on the premises or not. In *Losey* v. *Simpson, 3 Stock. 255,* Chancellor Williamson held that the actual occupancy of one claiming adversely to the record title imposed upon the other claiming under it the duty of inquiring of the party in possession of the premises of what his right of possession consisted. Vice-Chancellor Pitney, in *Essex County Bank* v. *Harrison, 12 Dick. Ch. Rep. 96,* states the same rule even more forcibly in favor of the party in possession, and cites the New Jersey cases on the point.

The occupation of the premises in question by Mrs. Gardom for seven months before the Browning judgment was entered afforded the plaintiff in that judgment abundant notice that she was in possession as owner, and the least inquiry made of Mrs.

Gardom would have disclosed the existence of her unrecorded deed.

The last contention of the defendants is that the occupation of the premises by the complainant was in no way inconsistent with the record title as it stood at the time of the entry of the judgment of Sarah C. Browning, under which the defendants claim. That judgment was entered in February, 1895, against Samuel S. E. Cowperthwaite. By the record at the time of the entry of the judgment Cowperthwaite appeared to be the owner of the premises in question. The occupation by Mrs. Gardom was not the occupation of Cowperthwaite. Nothing in the case indicates that Cowperthwaite, as owner, had ever done anything to put Mrs. Gardom in possession as his tenant, nor did any evidence show that her occupation appeared to be under Cowperthwaite's title. Her possession was her own, and entirely inconsistent with the record title in Cowperthwaite. If Sarah C. Browning, the plaintiff in the judgment claiming against Cowperthwaite, had gone to the premises before and at the time when the judgment was entered, and had there seen them in possession of Mrs. Gardom, used by her as her own residence, the plaintiff would at once have seen that there was a possession adverse to the record title in Cowperthwaite, and she would have been bound to have asked of the occupant, Mrs. Gardom, how she justified her tenure, and would, undoubtedly, have received the reply, as her title was entirely separate and adverse to Cowperthwaite, that she had a deed from him, by which she had become the purchaser of the premises.

This situation must be held to have brought to the plaintiff in the judgment, Sarah C. Browning, at the time when the judgment was entered, notice of title in Mrs. Gardom adverse to the record title in Cowperthwaite, and this notice is binding upon all the defendants who claim under that judgment.

The complainant contends, with much ingenuity and not without support in the proofs, that the Browning judgment was entered and pressed to sale of the complainant's lot, with actual knowledge on the part of those acting for the plaintiff in the judgment, and of the defendants Massey and Chester; that the complainant, Mrs. Gardom, and not Cowperthwaite, the defend-

ant in the judgment, held the title to the lot. The evidence on the point is inferential and not direct, and somewhat contradictory.

I do not deem it to be necessary to consider the complainant's argument on this point, as her actual use and occupation of the premises, both in point of time and in character, clearly support her right to a decree in accordance with the prayer of the bill.