Argued January 6, affirmed February 11, 1970

CHAFFIN, *Respondent, v.* SOLOMON,
*Appellant.*
465 P. 2d 217

E. B. *Sahlstrom,* Eugene, argued the cause for appellant. With him on the brief were Sahlstrom & Starr, Eugene.

M. C. *Logan,* Springfield, argued the cause for respondent. With him on the brief were Moore & Wurtz, Springfield.

TONGUE, J.

This is a suit to quiet plaintiff's title to real property. Defendant filed both a general denial and a cross-complaint to remove a cloud on defendant's title to the same property. The trial court entered a decree quieting title in plaintiff, from which defendant appeals.

Defendant contends that as a judgment creditor of plaintiff's grantor he obtained and docketed his judgment before plaintiff recorded her deed, with the result that under ORS 18.370 plaintiff's unrecorded deed is void as against the lien of defendant's judgment. Plaintiff both denies that contention and also contends that by reason of her possession, improvements and payment of taxes upon the real property defendant had constructive notice of her claim of title, with the result that the lien of defendant's judgment

was subject to plaintiff's claim of title, despite plaintiff's failure to record her deed.

## Execution of Deeds and Docketing of Judgment

On October 16, 1965, plaintiff purchased three lots in Lane County from A. E. Barnum for the sum of $11,500 under a land sale contract, which was never recorded. On the same date, but without the knowledge of plaintiff, Barnum assigned his vendor's interest to Donna Timber, Inc., followed by deeds, which were recorded on November 12, 1965.

In February, 1966, defendant filed an action as a creditor of Donna Timber, Inc.

On August 3, 1966, plaintiff paid off the contract balance and approximately three weeks later received warranty deeds from Donna Timber, Inc., as grantor. For some unexplained reason the deeds were not recorded at that time.

On December 9, 1966, defendant obtained a judgment against Donna Timber, Inc., and docketed that judgment in Lane County on December 12, 1966.

On January 23, 1967 (following the issuance of a writ of execution) a notice of sheriff's sale of the lots was issued. Shortly thereafter, on January 31, 1967, upon receiving notice of the sheriff's sale plaintiff recorded her deeds.

On February 24, 1967, the three lots were sold to defendant at a sheriff's sale for $500 each, over objections by plaintiff, and certificates of sale were issued to defendant. On February 24, 1968, plaintiff's redemption period expired and sheriff's deeds were then delivered to defendant and recorded by him on February 29, 1968. Meanwhile, on October 23, 1967, plaintiff filed this suit.

### *Possession, Use and Improvement of Property and Other Evidence of Constructive Notice*

The three lots, Lots 19, 20 and 24, are located on the shore of Collard Lake, near Florence, Oregon, with three other lots lying between Lots 19 and 20 and Lot 24.

During the summer and fall of 1966 plaintiff's family and friends and church groups used the property "practically every week in the summertime" for picnics, swimming and boating. They also visited the property "from time to time" during the winter.

During the summer a considerable amount of clearing work was done. This work included the clearing of the lake frontage of Lot 24, so as to provide a picnic and beach area. In addition, a possible cabin site and a forty foot strip was cleared along the shoreline of Lots 19 and 20. Trails were also cleared and cedar trees were cut for shakes on those lots.

Plaintiff was assisted by friends and by a church group in this clearing work. Plaintiff's son, who lived nearby, also testified that he "went over there and cleared and burnt for week after week". He also cut wood on all three lots, some of which he removed for use at his own home, with the remainder left for use at picnics.

The previously existing boat dock was repaired, improved, and extended by the installation of a new floating dock and brush was also cleared in that area.

In addition, a previously existing sleeping shelter was relocated and rebuilt and some shrubbery was transplanted in the cleared area. The previously existing U-shaped roadway from the public road to the shelter was also improved.

There was also uncontradicted evidence that a "For Sale" sign was posted on Lots 19 and 20, with the name "Chaffin" and with the plaintiff's telephone number. That sign was visible for some distance along the public road and was in existence during the summer of 1966 and continuing to the time of trial in 1968.

Finally, on November 9, 1966, plaintiff's husband (since deceased) paid the 1966-67 real property taxes on the three lots.

## Decision by Trial Court

After considering the foregoing facts, the trial court entered a decree quieting title in plaintiff, holding that "this case is controlled by the rule of law set forth in *Thompson v. Hendricks,* 118 Or 39, 245 P 724 (1926). The trial judge did not state, however, whether his decision was based (1) upon the interpretation of the judgment lien and recording statutes by this court in *Thompson,* or (2) upon the existence of facts sufficient to put defendant on constructive notice of plaintiff's claim of ownership, as recognized in *Thompson* to constitute a separate and independent basis for the decision in that case.

## The Judgment Lien and Recording Statutes

ORS 18.350(1) provides as follows:

"From the time of docketing an original or renewed judgment or the transcript thereof, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time prescribed in ORS 18.360."

In addition, ORS 18.370 provides as follows:

"Priority of lien over unrecorded conveyance. A conveyance of real property, or any portion thereof, or interest therein, shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment, or the transcript thereof, as the case may be."

Both of these statutes were originally adopted in 1862.

In Meier v. Kelly, 22 Or 136, 29 P 265 (1892), a case involving the application of the judgment lien statute to an equitable interest in real property (no actual deed having been executed, as in this case), this court held that the conveyance of an equitable interest which is not capable of being recorded is not subject to the terms of Hill's Code § 271 (now ORS 18.370) and that where, as a result of such a conveyance, the judgment debtor retains only the bare legal title, he has retained no "property" upon which the judgment lien under Hill's Code § 269 (now ORS 18.350) may attach. Although not necessary to the result of that decision, this court nevertheless went on to state that Hill's Code § 271 (now ORS 18.370) is to be literally applied in cases involving unrecorded deeds and other conveyances capable of being recorded (so as to invalidate any such unrecorded deeds), although not applicable to the conveyance of an equitable interest not capable of being recorded.

Later, in Thompson v. Hendricks, 118 Or 39, 245 P 724 (1926), a case involving the application of the judgment liens statute to an unrecorded deed, as in this case, the court held, in effect, that when the grantee under such a deed had gone into possession of the property, the judgment creditor of his grantor was put on such notice as to prevent the lien of his

judgment attaching to such property. This court also held that there was no reason why O.L. § 205 (now ORS 18.350) "should be extended so as to exclude from its operation prior unrecorded conveyances creating equitable estates and include prior unrecorded conveyances creating legal estates where the latter were made in good faith for value". Instead, the court held that O.L. § 205 (now ORS 18.350) and O.L. § 207 (now ORS 18.370), when properly construed as parts of the same act, must be read to mean that § 205 (ORS 18.350) is a qualification of § 207 (ORS 18.370) and that when so construed "the statute means that any unrecorded conveyance of real property is void as against the lien of a judgment upon whatever real property, *if any,* the judgment debtor may have at the time the judgment is docketed", and that "under this construction * * * if the unrecorded conveyance was one which was made in good faith and for value, the lien would not attach * * *." (118 Or at 46)

The foregoing interpretation of what is now ORS 18.350 and 18.370 in *Thompson v. Hendricks,* has been criticized upon the ground that it was "no better than dictum" and that "the legislature intended to do exactly what the court said there was no reason to do". See Note and Comment in 31 Or L.R. 330 at 344, in which the statutory interpretation as previously stated by this court in *Meier v. Kelly* was commended (at p 346) as "more closely following the statutory language employed". See also *Brownley v. Lincoln County,* 218 Or 7, 18, 343 P2d 529 (1959).

On the other hand, it may be contended, as stated in *Thompson v. Hendricks, supra* (at p 47) that:

"By merely docketing his judgment, a judgment

creditor parts with nothing, and does not become entitled to have the property of an innocent purchaser for value applied in satisfaction of a debt he does not owe. When properly construed, we think the statute did not so intend."

In this case it is contended by defendant that this court should now overrule what defendant refers to as dictum in *Thompson v. Hendricks* and that the court should now adopt and approve the rule as previously stated, (also by dictum) in *Meier v. Kelly*. Since, however, it is our view that the decision of the lower court must be affirmed on other grounds, any further statement on this subject at this time would only add further dictum on this subject.

### Requirements for Constructive Notice

■ It has long been established in Oregon that since the purpose of the legislature was to give a judgment lien creditor the same standing as the purchaser of property, it follows that when a creditor who resorts to such proceedings is informed of an outstanding equity, or of facts sufficient to put him on inquiry by which he could ascertain the existence of such an equity, the lien he secures by the docketing of his judgment will be subject to it. *Riddle v. Miller,* 19 Or 468, 469-70, 23 P 807 (1890); *Rayburn v. Davisson,* 22 Or 242, 245, 29 P 738 (1892); *Matsuda v. Noble et al,* 184 Or 686, 703, 200 P2d 962 (1948). See also *Thompson v. Hendricks, supra,* at 41-3.

Thus, appellant very properly concedes that "the application of ORS 18.370 can be defeated by showing that the judgment-creditor had actual knowledge of outstanding interests or actual notice of facts sufficient to put him on inquiry, i.e., constructive knowledge." It is also conceded by appellant that posses-

sion by the grantee may be sufficient to give such constructive notice to the judgment-creditor, at least where, as in *Belcher v. La Grande Nat. Bank,* 87 Or 665, 171 P 410 (1918), the grantee took immediate possession of the land and was in open, exclusive and notorious possession at all times. See also *Marvin & Co. v. Piazza,* 129 Or 128, 276 P 680 (1929); *Petrain v. Kiernan,* 23 Or 455, 32 P 158 (1893). And see *Thompson v. Hendricks, supra,* at 44-5.

Appellant contends, however, that the "casual use and the alleged improvements the plaintiffs made upon the three lots at Collard Lake" are not sufficient for this purpose, citing adverse possession cases involving somewhat similar facts. Appellant also contends that there are no previous Oregon judgment lien cases in which similar facts have been held sufficient to constitute constructive notice.

■ Obviously, the reason for the stringency of the requirements in adverse possession cases is that in such cases one who has no deed and has paid no consideration may nevertheless acquire title upon satisfying such requirements. But even in such cases it is now recognized that the nature and extent of the exercise of exclusive possession may depend somewhat upon the nature of the property involved, such as rough, brushy and uninhabited lands, at least when other factors are also present. See *Knecht v. Spake,* 218 Or 601, 611-12, 346 P2d 98 (1959); *Springer v. Durrette,* 217 Or 196, 200-01, 342 P2d 132 (1959).

■ Thus, while it may be true that there are no previous Oregon judgment lien cases involving substantially similar facts, we hold that the facts of this case, when taken as a whole, including not only the facts relating to the nature and extent of the possession and

improvements by plaintiff, as described above, but also the payment of taxes by plaintiff and the posting of a "For Sale" sign, with plaintiff's name and telephone number, were sufficient to give defendant constructive notice of plaintiff's claim of ownership. *Duane v. Staley* (Fla) 98 So 2d 74 (1957); *Hatch v. Bigelow*, 39 Ill 546 (1864); *Gardom v. Chester*, 60 N.J. Eq. 238, 46 A 602 (1900), and Merrill on Notice, 168, 170-71 and 175 §§ 140, 141, 142 and 146.

It follows that defendant's judgment lien was subject to plaintiff's claim and that the decree of the lower court, under which title was quieted in plaintiff, must be affirmed.

O'CONNELL, J., specially concurring.

*Thompson v. Hendricks*, 118 Or 39, 245 P 724 (1926) was wrong in interpreting ORS 18.350 and 18.370 for the reasons stated in a note by William E. Love in 31 Or L Rev 330 (1952). I think that we should take this opportunity to repudiate what was said in the *Thompson* case and thereby clarify our recording statutes.