Argued and submitted November 26, 1990, affirmed July 3, reconsideration denied September 25, petition for review denied October 25, 1991 (312 Or 235)

## VANDEHEY DEVELOPMENT CO.,
*Respondent,*

*v.*

## Efran T. SUAREZ,
Zenaida Suarez, Efran T. Suarez, Jr.,
and Richard R. Suarez,
*Appellants,*

*and*

## ELK HORN RANCH ASSOCIATES,
by and through
Washington Investment Service, Inc.,
*Defendant.*

(88-08-9693; CA A61508)

814 P2d 1094

Steven J. Joseph, La Grande, argued the cause for appellants. With him on the briefs was Carey, Joseph & Mendiguren, La Grande.

Andrew M. Rich, Hillsboro, argued the cause for respondent. With him on the brief was Huffman, Zenger & Rich, P.C., Hillsboro.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendants[1] appeal a judgment for plaintiff in an action for reformation, ejectment and to quiet title to certain real property. They assign error to the court's finding that they had constructive notice that plaintiff's predecessors in interest claimed ownership of the property and that they were not *bona fide* purchasers without notice of that claim. We review *de novo,* ORS 19.125(3), and affirm.

In 1970, Hallmeyer purchased the 3,800-acre Big Sheep Creek Ranch, an eight-mile strip of land along a creek that descends from the Wallowa Mountains. It had been surveyed in 1886. After he purchased it, Hallmeyer sold a 2,050-acre parcel and partitioned the remainder into lots. He did not conduct a survey. To locate each lot, he measured the land from two monuments, four miles apart, and staked fence posts to show section lines. In 1972, he registered the partition with the state Real Estate Division, *former* ORS 92.405, which issued a subdivision report that stated:

"THIS SUBDIVISION *HAS NOT BEEN PHYSICALLY SURVEYED* AND THE INDIVIDUAL PARCELS WILL NOT BE STAKED AT THE CORNERS. THEREFORE, PROSPECTIVE PURCHASERS SHOULD BE AWARE THAT IN ORDER TO ASCERTAIN THE EXACT BOUNDARIES OF THE PARCEL THEY MAY INTEND TO PURCHASE, THEY MAY HAVE TO OBTAIN THE SERVICES OF A SURVEYOR OR ENGINEER, AT THEIR OWN EXPENSE, FOR THE PURPOSE OF ELIMINATING FUTURE PARCEL BOUNDARY PROBLEMS."

One 70-acre lot included a meadow with a pole building, septic tank and sheep pens. Hallmeyer divided that lot into seven ten-acre lots, drawing up a map that designated them and an eighth ten-acre lot as lots 26A through 26H. Again, he did not conduct a survey. Instead, he measured each lot without knowing precisely where the adjacent section line was and drove fence posts as "approximate boundaries."

In 1973, Roberts and Simich purchased property described by metes and bounds that corresponded to lot 26A on Hallmeyer's map. In 1976, part of that lot washed out.

---

[1] Elk Horn Ranch Associates has not appealed, and the Suarezes are referred to as defendants.

Hallmeyer told them that they could exchange it for any other lot. They chose lot 26E. On April 1, 1980, they and Hallmeyer executed warranty deeds to exchange ownership of lots 26A and 26E. The metes and bounds description in Hallmeyer's deed, however, actually described what was lot 26G on the map. That lot was an uninhabitable bluff.

In September, 1980, Hallmeyer conveyed the remaining parcels of the ranch to defendants by special warranty deed. Defendants did not conduct a survey, relying in part, instead, on Hallmeyer's map. In 1984, Roberts died, and his widow asked plaintiff to buy her lot. In 1987, Simich and Roberts' widow and son conveyed lot 26G by metes and bounds to plaintiff. It did not conduct a survey. Later, however, it and defendants disputed ownership of lot 26E. Plaintiff hired a surveyor, who found a corner section marker and provided an accurate metes and bounds description of lot 26E. In May, 1988, Simich and Roberts' widow and son executed a correction deed that described lot 26E by metes and bounds and provided:

> "This deed is to correct the description set forth in that certain deed dated April 1, 1980 [from Hallmeyer to Roberts and Simich] * * *, which deed was executed by reason of mutual mistake from the grantor and the grantees * * *."

Plaintiff then brought this action to reform the deed, eject defendants and quiet title in it.

The court granted reformation. Defendants argue that reformation was improper, because they had no notice that Roberts and Simich claimed ownership of lot 26E. They assert no other defense to reformation.

■ A purchaser is charged with constructive notice of a claim to property when the circumstances are such that, with reasonable observation and intelligence, he should have had notice of that interest at the time of purchase. *High v. Davis,* 283 Or 315, 333, 584 P2d 725 (1978); *Corey v. United Savings Bank,* 52 Or App 263, 269, 628 P2d 739, *rev den* 291 Or 368 (1981). Whether or not defendants made inquiry, they are charged with notice of every fact that a reasonable inquiry would have disclosed. *High v. Davis, supra,* 283 Or at 334.

■ Defendants were on inquiry notice that Roberts and Simich claimed ownership of lot 26E. They had improved lot

26E and its structures and were present on it during the summer when defendants investigated their purchase. The Robertses had camped on lot 26E throughout the summers and on some weekends from 1977 through 1980, at least twice from 1980 through 1981 and again throughout the summers from 1981 through 1984. Simich and his wife had stayed there at times as well. The couples had improved the pole building roof, cut the grass and placed lawn furniture on the porch that was visible from the road. The physical improvements to the property, given its remote location, put defendants on inquiry notice that someone was asserting ownership of it. *Webb v. Culver,* 265 Or 467, 471, 509 P2d 1173 (1973); *Chaffin v. Solomon,* 255 Or 141, 149, 465 P2d 217 (1970).

Moreover, before their purchase, Hallmeyer had told defendants that one of the meadow lots was owned. Other property owners had told them that Roberts and Simich owned the lot with the "sheep pens," most of which stood on lot 26E. The state subdivision public report stated that the property had not been surveyed and that, to be certain of the parcel boundaries, any purchaser would have to hire a surveyor. Defendants did not. They offered no evidence that a survey or further inquiry would not have disclosed that the Robertses and the Simiches regularly used and claimed ownership of lot 26E. *See Willis v. Stager,* 257 Or 608, 616, 481 P2d 78 (1971).[2] The court correctly decided that defendants had constructive notice of the claim of Roberts and Simich to lot 26E and, therefore, were not *bona fide* purchasers.

Defendants also assign error to the judgment for the reason that it fails to resolve ownership of lot 26G. They argue that, after reformation of the 1980 deed, plaintiff owns lots 26E and 26G and that the court did not, therefore, do equity. Defendants are incorrect. In the judgment, the court reformed the 1980 deed to specify that Hallmeyer had conveyed lot 26E to Roberts and Simich. It was unnecessary for the judgment to say more.

Affirmed.

---

[2] The only personal contact between defendants and the Robertses and the Simiches was in 1982, after defendants' purchase, when they saw the Robertses camping on lot 26E and asked them who they were. Defendants did not then assert that they were trespassing.